UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TAUHEED WILDER,

                Petitioner,

v.                              CASE NO. 05-CV-72874-DT
                              HONORABLE MARIANNE O. BATTANI

JAN TROMBLEY,

                Respondent.

_____/

**OPINION AND ORDER**
**(1) VACATING THE ORDER OF REFERENCE TO THE MAGISTRATE JUDGE,**
**(2) DENYING THE HABEAS CORPUS PETITION,**
**(3) DENYING A CERTIFICATE OF APPEALABILITY, BUT**
**(4) GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

       Petitioner Tauheed Wilder, a state prisoner at Carson City (Michigan)

Correctional Facility, has filed a pro se habeas corpus petition under 28 U.S.C. § 2254.

The habeas petition attacks Petitioner's state convictions for armed robbery and two

firearm offenses.  Petitioner claims that he is imprisoned in violation of his rights under

the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  Having

reviewed the record and pleadings, the Court believes that Petitioner is not entitled to

the relief he seeks.  Consequently, the order of reference to the magistrate judge [dkt.

#42] is vacated, and the habeas petition is denied.

### I.  Background

### A.  The Facts

       In 2001, Petitioner was charged in Wayne County, Michigan with two counts of

armed robbery, one count of carjacking, felon in possession of a firearm, and

possession of a firearm during the commission of a felony (felony firearm). The charges arose from allegations that Petitioner and four other men (Johnny Blanchard, Antonio Stallings, Derrick Lyons, and Eddie Fantroy) robbed Candace Lockridge and Robin Taylor while the two women were seated in a car on Eaton Street in Detroit.

The evidence at trial established that, on June 18, 2001, Petitioner and his co-defendants went looking for somebody to rob. Antonio Stallings was driving a black Ford Explorer with Derrick Lyons as his passenger. Petitioner was the passenger in an Oldsmobile driven by Johnny Blanchard. About 12:30 a.m., Ms. Lockridge and Ms. Taylor were seated in a car in front of Ms. Lockridge's house. They were approached by the driver of the black Ford Explorer, who talked to the women and then left the area. A young man subsequently walked by the women and, shortly afterward, the women were surrounded by armed men. Someone on the passenger side of the car where Ms. Lockridge was seated demanded her purse, and someone on the other side of the car took items belonging to Ms. Taylor. The women got out the car and heard gunshots as they ran away. One of the men drove away in the car that the women had been seated in. The women later called the police and the owner of the stolen car, who was a friend or relative of Ms. Taylor.

The stolen car was equipped with Onstar, a satellite tracking device, and by approximately 4:30 a.m., the police, the owner of the car, and two complainants located the car on St. Mary's Street, about three or four miles away from where it was stolen. The Ford Explorer was parked a few houses away at 8055 St. Mary's Street. Four of the five defendants were standing outside that address. When the complainants indicated to the police that the men were the ones who had robbed them, the police

2

arrested Petitioner, Antonio Stallings, and Eddie Fantroy.  Derrick Lyons apparently was left behind on Eaton Street.  He was arrested when a police officer observed him walking up St. Mary's Street.  Johnny Blanchard initially avoided arrest by going in the house at 8055 St. Mary's Street.  Later that day, the police executed a search warrant at that address and arrested Blanchard, who was sitting on the porch.  The police found personal property taken from Ms. Lockridge and Ms. Taylor inside the house.

About 10:30 p.m. on the same day, Petitioner made a statement to the police. He admitted that he had participated in the robbery on Eaton Street earlier that day, but he claimed that he had stood behind the car and that he had not been armed.  He concluded his statement by saying that he regretted what he had done and that it was a mistake.

## B.  The Trial, Sentence, and First Appeal

Petitioner was tried jointly with Johnny Blanchard, Derrick Lyons, and Eddie Fantroy.[1]  Blanchard and Fantroy were tried before separate juries, while Petitioner and Lyons opted to have a simultaneous bench trial.  The prosecutor's theory was that Petitioner was the man who stood on the passenger side of the car and robbed Candace Lockridge.  The prosecutor speculated that Antonio Stallings robbed Ms. Taylor on the driver's side of the car, that Johnny Blanchard had been standing behind the car, that Eddie Fantroy had been in front of the car, and that Derrick Lyons was the "scout" who walked by the car before the robbery and carjacking.  Petitioner did not testify, nor present any witnesses.  His defense was that there was reasonable doubt

---

[1] The charges against Antonio Stallings were resolved before Petitioner's trial.

3

because the complaining witnesses were either reckless or untruthful regarding their ability and opportunity to observe the people involved in the case. Defense counsel urged the trial court to find Petitioner guilty of unarmed robbery as a lesser-included offense of armed robbery and not guilty of the other offenses.

On March 28, 2002, the trial court found Petitioner guilty of felon in possession of a firearm, Mich. Comp. Laws § 750.224f, felony firearm, Mich. Comp. Laws § 750.227b, and one count of armed robbery, Mich. Comp. Laws § 750.529. The trial court acquitted Petitioner of carjacking and a second count of armed robbery.

At his sentencing on April 17, 2002, Petitioner apologized to the court, the victim, and his family and asked for forgiveness. The trial court sentenced Petitioner as a second felony offender to two years in prison for the felony firearm conviction, followed by concurrent terms of ten to thirty years for the robbery conviction and one to five years for the felon-in-possession conviction.

Petitioner appealed his convictions as of right on grounds that (1) Robin Taylor's in-court identification of him should have been suppressed, (2) the trial court erred when scoring offense variable one of the sentencing guidelines, and (3) his statement to the police was involuntary and a violation of his constitutional rights. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished decision, see People v. Wilder, No. 242320  (Mich. Ct. App. June 10, 2004), and on December 29, 2004, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. See People v. Wilder, 690 N.W.2d 117 (Mich. 2004) (table).

### C.  The Habeas Petition, State Collateral Appeal, and Supplemental Pleadings

4

Petitioner filed his habeas corpus petition on July 22, 2005. He alleged that the trial court violated his constitutional rights by (1) permitting the complainant to identify him at trial, (2) admitting his statement to the police, and (3) assessing twenty-five points under offense variable one of the sentencing guidelines. Respondent argued in an answer to the petition that: (1) the first claim was barred from review by Petitioner's failure to file a pretrial motion to suppress the in-court identification; (2) the second claim lacked merit because Petitioner failed to rebut the presumption of correctness accorded the state court's finding of fact on whether Petitioner requested counsel during the interrogation; and (3) the state court's resolution of Petitioner's third claim was not contrary to, or an unreasonable application of, Supreme Court precedent.

Petitioner subsequently asked the Court to hold his case in abeyance so that he could pursue state remedies for two new claims regarding his trial and appellate attorneys. The Court granted Petitioner's request and closed this case for administrative purposes. Petitioner then returned to state court and filed a motion for relief from judgment in which he argued that his attorneys were ineffective for failing to challenge his in-court identification. The trial court denied Petitioner's motion after concluding that, because the identification was proper, Petitioner's attorneys were not ineffective. Petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). See People v. Wilder, No. 272877 (Mich. Ct. App. Apr. 18, 2007). On September 10, 2007, the Michigan Supreme Court denied leave to appeal for the same reason. See People v. Wilder, 737 N.W.2d 713 (Mich. 2007).

On March 9, 2009, Petitioner returned to this Court and moved for permission to

5

supplement his habeas petition with claims about trial and appellate counsel.  The Court granted Petitioner's motion and re-opened this case.

In a supplemental answer to the petition, Respondent urges the Court to reconsider its order re-opening this case, because Petitioner waited over a year to return to federal court after exhausting state remedies for his claims about trial and appellate counsel.  Respondent also maintains that Petitioner's ineffectiveness claims are barred from review by his failure to raise the claims on direct review and his failure to show "cause" for his procedural default and resulting prejudice or a miscarriage of justice.

Procedural default is not a jurisdictional limitation, <u>Pudelski v. Wilson</u>, 576 F.3d 595, 606 (6th Cir. 2009), <u>cert</u>. <u>denied</u>, __ U.S. __, 130 S. Ct. 3274 (2010), and the Court declines to reconsider its order re-opening this case.  The Court will proceed to address the merits of Petitioner's claims, using the following standard of review.

## II.  Standard of Review

State prisoners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state

6

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct."  Goodwin v. Johnson, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and Landrum v. Mitchell, 625 F.3d 905, 914 (6th Cir. 2010)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, __ U.S. __, __, 131 S. Ct. 770, 786 (2011).  To obtain a writ of habeas corpus from a federal court, a petitioner must show that the state court's decision "was so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.

### III.  Discussion

#### A.  The Complainant's Identification of Petitioner

7

Petitioner alleges that the trial court deprived him of a fair trial and due process of law by permitting Robin Taylor to identify him at trial.  Ms. Taylor did not identify Petitioner during a pretrial line-up, but she did identify him at the preliminary examination and at trial.  Petitioner claims that the preliminary examination was a suggestive procedure, because he was seated at the defense table at the time, and that the suggestive preliminary examination tainted Ms. Taylor's identification of him at trial.

The Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner did not raise the issue in the trial court.  The Court of Appeals concluded that the trial court did not err in failing sua sponte to disallow the identification at trial, because Ms. Taylor's identification was not merely the result of the suggestive circumstances of seeing Petitioner in court.

### 1.  Clearly Established Federal Law

A pretrial identification procedure violates a defendant's constitutional right to due process if the procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  Neil v. Biggers, 409 U.S. 188, 197 (1972) (quoting Simmons v. United States , 390 U.S. 377, 384 (1968)).  "To determine whether an allegedly suggestive pre-trial identification casts an impermissible taint on a later in-court identification, a court utilizes a two-step evaluation."  Mills v. Cason, 572 F.3d 246, 251 (6th Cir. 2009) (citing Ledbetter v. Edwards, 35 F.3d 1062, 1070-71 (6th Cir. 1994)).  First, the court must decide whether the pretrial procedure was unduly suggestive.  Id. at 251.  The question is whether "the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection."  Cornwell v. Bradshaw, 559 F.3d 398, 413 (6th Cir. 2009), cert. denied, __ U.S. __, 130

8

S. Ct. 1141 (2010).  Second, if the pretrial procedure was unnecessarily suggestive, the court must consider "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive."  Neil v. Biggers, 409 U.S. at 199.  "If an identification is reliable, it will be admissible even if the confrontation was suggestive."  Howard v. Bouchard, 405 F.3d 459, 469 (6th Cir. 2005).

### 2.  The Preliminary Examination

Robin Taylor's inability to identify Petitioner at the pretrial line-up was a factor to be considered in judging the weight of the in-court identification, but it was not a basis for excluding her identification testimony at trial.  Id. at 484.  The question then is whether the preliminary examination was an impermissibly suggestive procedure.

Ms. Taylor identified Petitioner at the preliminary examination while he was seated at the defense table.  An identification under these circumstances can be suggestive.  Id. at 470.  Candace Lockridge, however, was unable to identify Petitioner at the proceeding.  (Tr. July 5, 2001, at 11.)  The record, moreover, indicates that two of Petitioner's co-defendants (Johnny Blanchard and Eddie Fantroy) also were present and were seated directly behind their attorneys.  (Id. at 4-5.)  Ms. Taylor identified Fantroy at the preliminary examination, but not Blanchard.  (Id. at 53-54.)  These facts indicate that, while the pretrial procedure may have been somewhat suggestive, it was not impermissibly suggestive.

### 3.  Independent Basis for the Identification

Even if the pretrial procedure were impermissibly suggestive, there is some basis

for concluding that Ms. Taylor had an independent basis for her in-court identification.

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. at 199-200.

Ms. Taylor did not have as good of an opportunity to view the man at Ms. Lockridge's window as Ms. Lockridge did, because she was seated in the driver's seat of the car. However, she claimed that she saw part of the man's face (Tr. Mar. 21, 2002, at 89), and the lighting was good. The two women were seated in front of Ms. Lockridge's house, and Ms. Lockridge testified that her porch light shed light all the way to the sidewalk. One could see "decently" if one were paying attention. (Tr. Mar. 20, 2002, at 122.)

Ms. Taylor's degree of attention was good, for she heard the conversation between Ms. Lockridge and the man at Lockridge's window and then looked to see if she knew the person. She could not describe the man's clothes at trial, but she claimed that she paid attention to his skin and braids. (Tr. Mar. 21, 2002, at 83-89.) She observed a gun in the man's hand (id. at 52), and the presence of the gun suggests that Ms. Taylor had a heightened degree of attention. United States . Crozier, 259 F.3d 503, 511 (6th Cir. 2001).

Ms. Taylor's estimate of the man's weight was at least sixty pounds overstated. She claimed that the man weighed 200 to 220 pounds, but he was only 140 pounds at the line-up on the same day. (Tr. Mar. 21, 2002, at 126-27.) While the discrepancy in

the description makes the in-court identification "somewhat less reliable, it is not fatal."

Howard v. Bouchard, 405 F.3d at 483.  Ms. Taylor accurately described Petitioner's

distinctive dreadlocks or braided hair, and the Sixth Circuit Court of Appeals has found

identifications reliable even when there were discrepancies in an earlier description.  Id.

at 483-84 (citing United States v. Meyer, 359 F.3d 820 (6th Cir. 2004)).

Ms. Taylor was certain of her identification at the preliminary examination (Tr.

July 5, 2001, at 48-52), and the length of time between the crime and the preliminary

examination was only seventeen days.  A delay of a few weeks is not unreasonably

long.  Dodd v. Nix, 48 F.3d 1071, 1074 (8th Cir. 1995).  Under the totality of the

circumstances, Ms. Taylor's identification of Petitioner was sufficiently reliable to permit

her in-court identification of Petitioner.

### 4.  Harmless Error

Even if the preliminary examination was impermissibly suggestive and even if

there was no independent basis for the identification at trial, in-court identifications are

subject to harmless-error analysis.  United States v. Wade, 388 U.S. 218, 242 (1967).

Petitioner admitted to the police that he participated in the robbery.  (Tr. Mar. 27, 2002,

at 15.)  Additionally, Police Officer Tony Jackson testified that the complainants

identified the men in front of the house on St. Mary's Street as the men who carjacked

them.  (Tr. Mar. 22, 2002, at 14.)  The Court therefore finds that any suggestiveness in

the procedures at the preliminary examination could not have had a "substantial and

injurious effect or influence" on the trial court's decision and was harmless.  Brecht v.

Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S.

750, 776 (1946)).  Petitioner has no right to relief on the basis of his claim about the in-

11

court identification of him.

## B.  Trial and Appellate Counsel

Petitioner alleges that his trial attorney was ineffective for failing to move to suppress Robin Taylor's identification of him at trial.  Petitioner claims that the in-court identification of him was unreliable and that he likely would have been acquitted had counsel moved to suppress the in-court identification.

Petitioner further alleges that his appellate attorney was ineffective for failing to raise his claim about trial counsel in the appeal of right.  Petitioner argues that his appellate attorney's decision to raise the identification issue, knowing that it could not succeed because trial counsel did not move to suppress the in-court identification, was a serious blunder, not appellate strategy.  Petitioner maintains that he would have stood a chance of getting relief if appellate counsel had raised his claim about trial counsel.

Petitioner raised this issue for the first time in his motion for relief from judgment. The trial court noted that the Michigan Court of Appeals had already rejected the underlying issue and determined that Robin Taylor's identification of Petitioner was proper.  The court concluded that, because there was no error, Petitioner did not meet the burden of showing ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984).

## 1.  Clearly Established Federal Law

The Supreme Court's decision in Strickland is clearly established federal law. Cullen v. Pinholster, __ U.S. __, __, 131 S. Ct. 1388, 1403 (2011).  Under Strickland, an attorney is constitutionally ineffective if "counsel's performance was deficient" and "the deficient performance prejudiced the defense."  Strickland, 466 U.S. at 687.  This same

12

standard applies to claims about appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285 (2000)).

To establish deficient performance, a habeas petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.

To demonstrate that counsel's performance prejudiced the defense, a habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 131 S. Ct. at 792 (quoting Strickland, 466 U.S. at 693).  "The standards created by Strickland and [28 U.S.C.] § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Id. at 788 (internal and end citations omitted).

## 2.  Application

Failure to move to suppress an unduly suggestive identification can form the basis of an ineffective-assistance-of-counsel claim.  See Howard v. Bouchard, 405 F.3d at 479-85; Millender v. Adams, 376 F.3d 520, 524-25 (6th Cir. 2004).  In this case, however, the pretrial procedure in question was only minimally suggestive.  See supra, section III.A.2.  Thus, a motion to suppress likely would have been denied.

Even if defense counsel's performance was deficient, the failure to challenge the identification did not prejudice Petitioner because he admitted to participating in the

13

robbery when he spoke with the police.  Cf. Stone v. Farley, 86 F.3d 712, 718 (7th Cir. 1996) (stating that "the failure to challenge the identification did not prejudice Stone because of the strength of the other evidence against him").  The trial court did not need Ms. Taylor's testimony to place Petitioner at the crime scene because Petitioner himself admitted to being there.  Although he denied being armed and being present at Ms. Lockridge's window, under an aiding and betting theory, he was just as guilty as the principle.  See Mich. Comp. Law § 767.39; People v. Robinson, 715 N.W.44, 47-48 (Mich. 2006).

Petitioner has failed to demonstrate that his trial attorney was ineffective under Strickland.  And because trial counsel was not ineffective, appellate counsel was not ineffective for failing to raise a claim about trial counsel.  Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001).

### C.  Petitioner's Statement to the Police

Petitioner alleges that his custodial statement to Sergeant Virgil Washington was involuntary because he was held in custody for twenty hours before making the statement.  Petitioner claims that he was sleepy, dehydrated, not fully recovered from a gunshot wound, and given only a bag of chips to eat.  He also claims that he was promised help if he showed the police where co-defendant Johnny Blanchard lived.

Petitioner further alleges that Sergeant Washington violated his rights under the Fifth and Sixth Amendments to the United States Constitution by ignoring his request for counsel.  According to Petitioner, Sergeant Washington told him that he could not see a lawyer until the line-up.

The trial court held an evidentiary hearing on this issue and determined at the

14

conclusion of the hearing that Sergeant Washington's testimony was more credible than Petitioner's testimony.  The trial court ruled that Petitioner's statement was voluntary and admissible at trial.  The Michigan Court of Appeals deferred to the trial court's credibility determination and affirmed the trial court's decision to admit Petitioner's statement in evidence.

### 1.  Clearly Established Federal Law

#### a.  Miranda/Edwards

The Fifth Amendment to the United States Constitution provides that "no person shall be . . . compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  "To give force to the Constitution's protection against compelled self-incrimination, the [Supreme] Court established in Miranda[2] 'certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.'"  Florida v. Powell, __ U.S. __, __, 130 S. Ct. 1195 , 1203 (2010) (quoting Duckworth v. Eagan, 492 U.S. 195, 201 (1989)) (footnote added).  "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  Miranda, 384 U.S. at 444.

If at any stage of the process, the defendant indicates that he wishes to consult with an attorney or does not want to be interrogated, the police may not question him. Id. at 444-45.  "[N]o subsequent interrogation may take place until counsel is present,"

---

[2]  See Miranda v. Arizona, 384 U.S. 436 (1966).

15

Montejo v. Louisiana, __ U.S. __, __, 129 S. Ct. 2079, 2090 (2009), "unless the

accused himself initiates further communication, exchanges, or conversations with the

police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).  This rule "is 'designed to

prevent police from badgering a defendant into waiving his previously asserted Miranda

rights.'" Minnick, v. Mississippi, 498 U.S. 146, 150 (1990) (quoting Michigan v. Harvey,

494 U.S. 344, 350 (1990)).

### b.  Voluntariness

The test for voluntariness of a confession is whether

> "the confession [was] the product of an essentially free and unconstrained
> choice by its maker[.]  If it is, if he has willed to confess, it may be used
> against him.  If it is not, if his will has been overborne and his capacity for
> self-determination critically impaired, the use of his confession offends due
> process."

Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973) (quoting Culombe v.

Connecticut, 367 U.S. 568, 602 (1961)).  When determining whether a defendant's will

was overborne in a particular case, courts must assess

> the totality of all the surrounding circumstances – both the characteristics
> of the accused and the details of the interrogation.  Some of the factors
> taken into account have included the youth of the accused, his lack of
> education, or his low intelligence, the lack of any advice to the accused of
> his constitutional rights, the length of detention, the repeated and
> prolonged nature of the questioning, and the use of physical punishment
> such as the deprivation of food or sleep.

Id. at 226 (citations omitted).  Courts must "determine[] the factual circumstances

surrounding the confession, assess[] the psychological impact on the accused, and

evaluate[] the legal significance of how the accused reacted."  Id. (citing Culombe, 367

U.S. at 603).

"[A] defendant faces an uphill climb when . . . he argues that a confession was

16

involuntary even though he properly received and waived his Miranda rights." <u>Simpson v. Jackson</u>, 615 F.3d 421, 432 (6th Cir. 2010), <u>petition for cert. filed</u>, No. 10-458 (U.S. Oct. 4, 2010).  "[T]he facts of a given interview must be especially egregious to lead to the conclusion that a state court's application of Supreme Court involuntariness case law was unreasonable for purposes of habeas relief . . . ."  <u>Id</u>.

## 2.  The Evidentiary Hearing

As noted, the trial court held a pretrial evidentiary hearing on Petitioner's motion to suppress his statement to the police.  Detective Sergeant Mark Burke testified at the hearing that he interviewed Petitioner at 10:50 a.m. on June 18, 2001, for the purpose of acquiring background information.  Sergeant Burke claimed that Petitioner was calm and did not have any problems answering the questions.  Petitioner did not seem tired or intoxicated, and he did not request counsel.  (Tr. Sept. 20, 2001, at 32-34.)

Detective Sergeant Virgil Washington testified that he took a verbal statement from Petitioner on the same morning and that Petitioner denied being present at the scene of the crime.  He sent Petitioner to his cell and took a formal statement from Petitioner about 10:30 p.m. that same day after confronting Petitioner with information that he acquired from Johnny Blanchard.  (<u>Id</u>. at 4-30.)  As explained by the state court, Petitioner

> read aloud from a Constitutional Rights Certificate of Notification form, initialed each item, signed the form, and indicated that he understood his rights.  The sergeant further recounted that he typed [Petitioner's] statement, and that [Petitioner] read and signed the document.  The officer testified that he neither threatened [Petitioner], nor promised him anything, and that [Petitioner] was suffering from no physical injury that he noticed.  According to the officer, [Petitioner] did not appear sleep deprived, and showed no obvious emotion, or signs of intoxication.  The witness added that he touched [Petitioner] only in the course of taking handcuffs on and

17

off, and that [Petitioner] was "real pleasant" in the matter.  Asked if
[Petitioner] demonstrated any difficulties in reading, the officer answered
in the negative, adding that [Petitioner] "seemed quite intelligent" and
never asked questions about his rights.  According to the witness,
[Petitioner] never requested legal counsel.  The officer said that he asked
[Petitioner] if he had been denied food, access to lavatory facilities, or
access to a lawyer, or if he had been threatened, or promised anything in
exchange for his statement, and that [Petitioner] answered no.

Wilder, Mich. Ct. App. No. 242320, at 9.

Petitioner testified at the hearing that he was arrested about 1:30 a.m. and taken

to the Sixth Precinct.  At  8:00 a.m., police officers took him to their headquarters at

1300 Beaubien where he was kept in a dirty cell with roaches.  He was eighteen years

old and had not completed the twelfth grade.  He claimed that he had not slept and that

he was dehydrated due to not being able to drink from the dirty water fountain.  He also

claimed that he was not fully recovered from a gunshot wound, which he incurred over a

year earlier.  He admitted, however, that the wound had healed and that he was able to

walk and drive.  Petitioner also admitted that Sergeant Washington gave him a "pop"

and a bag of chips before he made his statement.

Although Petitioner conceded that his constitutional rights were read to him, he

claimed that he had not understood that he could stop the questioning.  He also stated

that he had asked for a lawyer before Sergeant Washington started questioning him and

that Washington had said there would be a lawyer at the line-up.  When he told

Sergeant Washington that he had nothing to do with the crime, Washington allegedly

ripped up the statement that he (Petitioner) had written.  Petitioner also testified that

Sergeant Washington had said he would receive the maximum sentence if he did not

make a statement and was subsequently picked out of a line-up, but that Washington

would ensure he did not get that much time if he made a statement then and there. Petitioner claimed that Sergeant Washington also promised to help him if he showed Washington where Johnny Blanchard lived.  He did, in fact, show the police where Blanchard lived before making his second statement.  (Tr. Sept. 20, 2001, at 38-55.)

Sergeant Washington testified on rebuttal that Petitioner made only one statement and that he (Washington) did not rip up another statement.  Sergeant Washington also denied threatening Petitioner with the maximum sentence if he made a statement after the line-up.  (Id. at 57.)

The trial court found the officers' testimony to be more believable than Petitioner's testimony.  The trial court concluded from Petitioner's demeanor that he was intelligent enough to have understood what was happening during the interrogation and that he knew what he was doing.  The court also stated that there was no evidence of physical abuse, and although Petitioner was advised of the seriousness of the charges and the penalty, those facts alone did not invalidate the confession.  The court stated that it was unclear as to why Petitioner felt he needed to make a statement.  The court concluded that Petitioner's statement was voluntary and not coerced.  (Id. at 73-76.)

### 3.  Analysis

This Court must defer to the trial court's determination of the credibility of the witnesses at the suppression hearing.  Ramonez v. Berghuis, 490 F.3d 482, 490 (6th Cir. 2007) (citing Hill v. Brigano, 199 F.3d 833, 840-41 (6th Cir. 1999)).  A federal habeas court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S. 422, 434 (1983).  This Court therefore accepts the trial court's determination that

Sergeant Washington's testimony was credible and that Petitioner's testimony was less credible.

According to Sergeant Washington, Petitioner was advised of his constitutional rights and did not request an attorney. Therefore, Petitioner's rights under <u>Miranda</u> and <u>Edwards</u> were not violated.

The record also indicates that Petitioner's statement was voluntary. He was only eighteen years old, but he had an eleventh- or twelfth-grade education, and, according to the trial court, he was intelligent enough to understand what was happening. Petitioner's testimony at the evidentiary hearing supports the conclusion that Petitioner was intelligent. He was articulate, and he had no trouble responding to the attorneys' questions.

Before the interrogation in question, Petitioner was advised of his constitutional rights, and although he was detained for about twenty hours before making a statement, the interrogation itself was not lengthy, and no threats or promises were made, according to Sergeant Washington. Petitioner was given an opportunity to sleep, and he apparently showed no signs of fatigue or physical discomfort. He also was fed at least once before the interrogation.

The Court concludes from the totality of the circumstances that Petitioner's statement to the police was voluntary. The Court therefore declines to grant relief on the basis of Petitioner's claim about his statement to the police.

### D. The Sentence

Petitioner alleges that the trial court improperly scored twenty-five points for offense variable one of the Michigan sentencing guidelines on the basis of Johnny

Blanchard's statement to the police that Blanchard fired a gun during the robbery.  The statute in question authorizes a score of twenty-five points if a firearm was discharged at a human being.  See Mich. Comp. Laws § 777.31(1)(a).  The statute also provides that, if one offender in a multiple-offender case is assessed points for the presence or use of a weapon, all offenders must be assessed the same number of points.  See Mich. Comp. Laws § 771.31(2)(b).

The trial court determined during trial that there was no evidence of gun casings at the crime scene, that no investigation was done to verify or disprove that a gun was fired at the victims, and that the officer who was sitting about a block away from the house on St. Mary's Street did not hear any gunshots at that location.  (Tr. Mar. 28, 2002, at 58-59.)   At Petitioner's sentencing, the trial court scored twenty-five points for offense variable one because Johnny Blanchard indicated in his statement to the police that he fired his gun.  (Tr.  Apr. 17, 2002, at 13-18.)

Petitioner maintains that the trial court ignored its own verdict and sentenced him as if he had been convicted of a crime involving gunshots.  Because Johnny Blanchard's statement was not admitted in Petitioner's case, Petitioner claims that the trial court's reliance on Blanchard's statement at sentencing violated Bruton v. United States, 391 U.S. 123, 126 (1968) (holding that the admission of a co-defendant's confession in a joint trial violates a defendant's right of cross-examination because of the substantial risk that the jury looks to the incriminating extra-judicial statements in determining the defendant's guilt, despite instructions to the contrary).  Petitioner further alleges that he was sentenced on the basis of inaccurate information and in violation of his constitutional right of confrontation, as explained in Crawford v. Washington, 541

21

U.S. 36 (2004).  The Michigan Court of Appeals affirmed the trial court's scoring of

offense variable one on the ground that there was evidence to support the scoring.

Although Petitioner couches his claim in constitutional terms, it is, in essence, a

challenge to the trial court's scoring of the State's sentencing guidelines.  The "alleged

misinterpretation of state sentencing guidelines . . . is a matter of state concern only."

Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003) (citing Travis v. Lockhart, 925 F.2d

1095, 1097 (8th Cir. 1991), and Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)).

"[F]ederal habeas corpus relief does not lie for errors of state law."  Lewis v. Jeffers, 497

U.S. 764, 780 (1990) (citing Pulley v. Harris, 465 U.S. at 37, 41 (1984), and Rose v.

Hodges, 423 U.S. 19, 21-23 (1975) (per curiam)).

Petitioner's rights under the Federal Constitution were not violated, because

"sentencing courts have broad discretion to consider various kinds of information."

United States v. Watts, 519 U.S. 148, 151 (1997); see also Witte v. United States, 515

U.S. 389, 397-398 (1995).  Courts may even take into account conduct which did not

result in a conviction, "so long as that conduct has been proved by a preponderance of

the evidence."  United States v. Watts, 519 U.S. at 157; see also Nichols v. United

States, 511 U.S. 738, 747 (1994).  Both of the victims in this case testified that they

heard gunshots after they got out of their car and ran away.  (Tr. Mar. 20, 2002, at 83

(Candace Lockridge's testimony); Tr. 21, 2002, at 60-61 (Robin Taylor's testimony)).

Thus, the shooting was proved by a preponderance of the evidence.

Petitioner, moreover, was afforded an opportunity at sentencing to argue through

counsel that the offense variable in question should be scored differently.  He was not

sentenced on the basis of "extensively and materially false" information that he had no

opportunity to correct through counsel.  Townsend v. Burke, 334 U.S. 736, 741 (1948).

Petitioner's reliance on Bruton is misplaced because, even though Blanchard's confession was inadmissible under Bruton at Petitioner's trial, "[e]vidence that is inadmissible at trial may be considered in a sentencing hearing."  United States v. Rojas-Martinez, 968 F.2d 415, 422 (5th Cir. 1992) (citing United States v. Singleton, 946 F.2d 23 (5th Cir. 1991)).  Petitioner's reliance on Crawford likewise is misplaced, because the Confrontation Clause does not apply at sentencing.  United States v. Paull, 551 F.3d 516, 527-28 (6th Cir.), cert. denied, __ U.S. __, 130 S. Ct. 187 (2009).  For all the reasons given above, the Court finds that Petitioner has no right to relief on the basis of his sentencing claim.

## IV.  Conclusion

The state courts' adjudications of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  Accordingly, the petition for a writ of habeas corpus [Dkt. #1], as supplemented in 2009, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED** because reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner nevertheless may proceed in forma pauperis on appeal because he was permitted to proceed in forma pauperis in the District Court and an appeal could be taken in good faith.  Fed. R. App. P. 24(a)(3)(A).

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Date: August 10, 2011

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner, Tauheed Wilder via ordinary U.S. Mail, and Counsel for the Respondent, electronically.

s/Bernadette M. Thebolt
Case Manager

24